**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| UNITED STATES OF AMERICA, |
| v. |
| RONNIE ANDERSON, |
| Defendant. |

**Criminal No. 15-166 (CKK)**

**MEMORANDUM OPINION**
(March 11, 2016)

Presently before the Court is the Defendant's [10] Motion to Compel Government to Preserve Evidence, the Government's [14] Opposition to Defendant's Motion to Prevent the Government from Consuming Biological Material in its Entirety, and the Defendant's [24] Reply to Government's Opposition to Defendant's Motion to Compel Government to Preserve Evidence. At issue are two sets of swabs, one set of wet and dry swabs recovered from a firearm and one set of wet and dry swabs recovered from the firearm's magazine, that the Government intends to test for touch DNA.  Anderson argues that the Government should be required to prove that consumption of the entire sample is necessary to produce scientifically reliable results.  In the event that the Government does not make this showing, Anderson requests that swabs be split in half prior to the extraction of the DNA and that one half be reserved for potential defense use.  The Government opposes this request, arguing that there is no legal support for Anderson's position with respect to the swabs and that Anderson's proposed protocol is not scientifically advisable. For the reasons described herein, the Court shall DENY Anderson's Motion and permit the Government to extract DNA from the swabs at issue without first splitting them in half.  Any remaining extract not consumed during testing shall be provided to the defense.

## I. BACKGROUND

On November 13, 2015, Anderson was charged by indictment with one count of unlawful possession of a firearm and ammunition by a person convicted of crimes punishable by imprisonment for a term exceeding one year in violation of 18 U.S.C. § 922(g)(1). Anderson's charge is based on his alleged possession of a Ruger P95 9mm semi-automatic pistol and 9mm ammunition which were recovered from under a bed in an apartment on Elvans Road, S.E., Washington, D.C., on October 3, 2015. On December 1, 2015, the Government filed a [4] Motion to Compel DNA Sample, requesting that the Court order Anderson to provide a sample of his DNA to compare to any DNA recovered from the firearm and the firearm's magazine that Anderson is alleged to have possessed. On that same day, Anderson filed an [5] Opposition to Government's Motion to Compel DNA Sample, arguing that the Motion should be denied, in part, because there was no DNA sample to compare to Anderson's DNA at that time because the Government had not commenced testing the items in evidence. At the status hearing held on December 2, 2015, the Court denied without prejudice the Government's Motion because the Government had not yet determined if there was DNA evidence present on the firearm and magazine such that a sample could be compared to Anderson's DNA profile. The Court indicated that the Motion may be re-filed if the Government is able to recover DNA from the firearm and magazine in evidence.

In a letter dated December 1, 2015, the Government notified defense counsel that the United States Attorney's Office intended to authorize the consumption of all the swabs from the firearm and magazine in question. The Government provided an excerpt from the letter which indicated:

The evidence in this case will be sent for testing at one of the following laboratories:

2

Signature Science, Bode-Cellmark, the Verdugo Regional Crime Laboratory, or Sorenson Forensics. Each of these laboratories has been accredited by the American Society of Crime Laboratory Directors/Laboratory Accreditation Board (ASCLD/LAB). When testing evidence of this nature, the laboratory typically has DNA "extract" left over that will be preserved in the event the defense decides to request testing. It is the laboratory's policy to preserve all DNA extracts that remain after the swabs have been consumed during testing. Furthermore, any remaining extract will be made available for the defense if your client requests and the Court, in turn, orders such testing.

Although the chance of complete consumption of the items identified above is remote – given the likelihood that there will be extract left over – the law permits the laboratory to go forward with testing at this time given that there is no way of knowing the incriminating or exculpatory nature of any DNA profile(s) recovered from the evidence until after the DNA testing has been completed and reported by the laboratory. The United States Attorney's Office will authorize the laboratory to proceed with testing on the above item(s) unless you file a motion with the Court opposing consumption on or before December 3, 2015.

Govt.'s Opp'n at 2 (quoting Govt.'s Letter to Def. Counsel dated Dec. 1, 2015).

On December 18, 2015, Anderson filed his instant [10] Motion to Compel Government to Preserve Evidence, requesting that the Court compel the Government to preserve a portion of the biological evidence collected from the firearm and the magazine so that Anderson may independently test it if he deems such a course of action necessary. On January 8, 2016, the Government filed its [14] Opposition to the Motion, arguing that the consumptive DNA testing, if necessary to obtain a complete DNA profile, does not violate Anderson's constitutional or discovery rights. On February 18, 2016, Defendant filed his [24] Reply indicating, in part, that the parties have been unable to resolve this issue.[1] As such, the Court must determine whether or

---

[1] The Court notes that it vacated the original due date for the Reply brief in order to resolve Anderson's request that he be appointed new counsel. *See* Min. Order (Jan. 8, 2016). On January 21, 2016, the Court appointed Anderson new defense counsel and set a revised briefing schedule. *See* Min. Order (Jan. 21, 2016). Anderson indicated that he had no issue with the revised schedule at the hearing. *See id.*

not it is appropriate to require the Government to follow Anderson's proposed protocol for testing

the swabs recovered from the firearm and the magazine.  As described in Anderson's Reply, he

proposes that the laboratory cut each swab in half and perform extraction and quantification on

half of each swab.  Def.'s Reply at 6.  If there is sufficient DNA to proceed with typing from half

the swabs, then the laboratory would proceed with typing and transfer the second half of the swabs

to an independent laboratory chosen by the defense. *Id.*  If there is insufficient DNA to proceed

with typing from the first half of the swabs, then the laboratory may extract DNA from the second

half of the swabs and combine the extracts from both halves. *Id.*  The Government proposes

extracting all the DNA from each of the swabs and providing any remaining extract not consumed

during testing to the defense.  Govt.'s Opp'n at 2 (quoting Govt.'s Letter to Def. Counsel dated

Dec. 1, 2015).

## II.  DISCUSSION

The issue before the Court is whether it should require the Government to split the one set

of wet and dry swabs recovered from the firearm and the one set of wet and dry swabs recovered

from the magazine in half prior to extraction and, if the lab determines that one half of the swab

contains enough DNA for testing, provide the other half of the swab to the defense.  Anderson

argues that the proposed swab splitting approach is necessary to preserve his due process and Fifth

Amendment rights, as well as his discovery rights pursuant to Federal Rule of Criminal Procedure

16.  Indeed, Anderson asserts that based on these rights, the Government is required to preserve a

portion of the DNA sample so that Anderson may independently test it if he deems such testing

necessary for his defense, unless the Government can demonstrate that consumption of the entire

sample is necessary to produce scientifically reliable results.  The Government argues that there is

4

no legal basis for proceeding in this manner and that Anderson's proposal for testing is not scientifically advisable.  The Court shall first discuss the legal basis for Anderson's request that the Government be compelled to adhere to his proposed protocol and then the Court shall discuss the scientific advisability of each party's proposed protocol.  For the reasons described herein, the Court concludes that it shall not require the pre-extraction splitting of the swabs as requested by Anderson.

Anderson asserts that his due process and Fifth Amendment rights provide that the Government has a duty to protect and disclose evidence material to his defense. Indeed, due process provides that "[a] defendant has a constitutionally protected privilege to request and obtain from the prosecution evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed."  *California v. Trombetta*, 467 U.S. 479, 485 (1984) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)).  As the Government acknowledges in its opposition, its obligation encompasses a duty to preserve "material" evidence. Govt.'s Opp'n at 3.  In order to trigger the duty to preserve based on the materiality of the evidence at issue, the Supreme Court of the United States has explained that the evidence "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."  *Trombetta*, 467 U.S. at 489.  Here, the parties dispute whether the swabs recovered from the firearm and magazine are "material" such that the Government has a duty to preserve them in the manner requested by Anderson.

Indeed, the Government argues that the swabs are not material because the untested DNA sample has no apparent exculpatory value at this time.  Rather, the parties will only know whether

the swabs are exculpatory after they are tested.  Relying on the United States Court of Appeals for the Fifth Circuit's opinion in *Garrett v. Lynaugh*, 842 F.2d 113 (5th Cir. 1988), the Government argues that no evidence is destroyed as prohibited under *Trombetta* if the entire sample is consumed during testing considered to be necessary. *See* Govt.'s Opp'n at 4 (citing *Garrett*, 842 F.2d at 116).  Moreover, the Government argues that it only violates the due process clause if it destroys the swabs in bad faith. Govt.'s Opp'n at 5 (citing *Arizona v. Youngblood*, 488 U.S. 51 (1988)); *see also Youngblood*, 488 U.S. at 58 ("We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.").  Here, the Government asserts that the consumption of the entire swabs, if it occurs, would be done during normal testing pursuant to established techniques, and not in bad faith.  Govt.'s Opp'n at 5.

Anderson argues that the facts of the instant action are distinguishable from the cases cited by the Government and that the swabs at issue are material evidence.  First, Anderson argues that unlike in *Garrett,* he is *prospectively* seeking the preservation of a portion of the swabs prior to testing.  Def.'s Reply at 3.  Second, Anderson argues that the exculpatory value of the evidence is apparent because of the facts of this case.  Specifically, Anderson asserts that there were other persons present in the apartment who fled through a window immediately before the firearm was recovered. As such, Anderson argues that the swabs may include DNA from the person who possessed the firearm, which is evidence that would otherwise not be accessible to Anderson. *Id.* at 3-4 (citing *United States v. Gardner*, No. 4:14–CR–61–H, 2015 WL 1951809 (E.D.N.C. Apr. 29, 2015)).

Here, the Court finds that the due process clause and the Fifth Amendment do not require

the Government to preserve half of the swabs at issue prior to extracting any DNA evidence because it is not clear that the swabs, in fact, are material evidence. Notably, the Government is merely seeking to test the swabs to determine whether there is DNA present and, if so, to determine whether any DNA present can be matched or not matched to Anderson's DNA profile. Indeed, as the Government argues, at this time the swabs are neither exculpatory or inculpatory evidence. Moreover, the fact that Anderson is prospectively seeking the preservation of the swabs does not alter this analysis. As such, the Court concludes that the Government is not required to follow the protocol as requested by Anderson for the testing of the swabs based on Anderson's due process or Fifth Amendment rights.

Anderson also argues that the Government has a duty to preserve half of the swabs prior to extracting DNA pursuant to Federal Rule of Criminal Procedure 16. Pursuant to Rule 16(a)(1)(E), upon a defendant's request, the government must permit the defense to inspect and copy tangible objects or copies or portions of the tangible objects, if the object is within the government's possession, custody, or control, and: (1) the item is material to preparing the defense; (2) the government intends to use the item in its case-in-chief at trial; or (3) the item was obtained from or belongs to the defendant. Anderson argues that Rule 16 imposes a duty on the Government to preserve portions of the swabs so that he may independently test them. Anderson argues that the complete consumption of the swabs would foreclose his fundamental right to have his expert independently test them and, thus, complete consumption is only appropriate if the Government shows that it is necessary to produce scientifically reliable results. Def.'s Reply at 4. The Government argues that the plain language of Rule 16 does not limit the protocols that a laboratory must use when testing evidence. Moreover, the Government argues that Anderson may still have

an expert independently compare the DNA profile created from the swabs with Anderson's DNA profile and cross-examine the expert who conducted the test for the Government.

The Court agrees that the plain language of Rule 16 does not require that the Government conduct its testing in the manner proposed by Anderson. *See also* Fed. R. Crim. Pro. 16(a)(1)(F) (setting out the Government's discovery obligations for reports of scientific tests or experiments). As discussed above, it is unclear whether the swabs are material to preparing Anderson's defense, whether the Government intends to use any DNA evidence during its case-in-chief, or if any DNA is obtained, whether it is from or belongs to Anderson.  It is likely that the results of any testing will dictate the answers to these open questions.

The Court emphasizes in reaching these findings that it has relied on the Government's proposal with respect to the swabs at issue.  The Government is simply seeking to authorize the laboratory to consume the entire sample should the laboratory deem it necessary.  Indeed, as the Government indicates in its letter to the defense, it is the laboratory's policy to preserve all DNA extracts that remain after the swabs have been consumed and any remaining extract will be made available to the defense if it is requested by Anderson. *See* Govt.'s Opp'n at 2.  The Government indicates that the chance of complete consumption is "remote" given the "likelihood" that extract will be leftover. *Id.*  As such, the Court does not find that the Government's proposed protocol violates Anderson's due process or Fifth Amendment rights, or violates the Government's discovery obligations under Rule 16.

Given that the Court has found that the Government's proposed course of testing does not violate Anderson's due process rights or the Government's own discovery obligations under the Federal Rules of Criminal Procedure, the Court next turns to the scientific advisability of the

parties' proposed protocols for testing the swabs.  Here, each party purports that the other party's

proposed protocol is not scientifically advisable.  Notably, however, neither party appears to argue

that the other's approach is not scientifically *feasible*.  For the reasons described below, the Court

finds that the Government has submitted more evidence to establish that the scientific advisability

of its proposed protocol and, as such, the Court concludes that Anderson's motion should be

denied.

Each of the parties submitted affidavits created for other court cases in support of their

proposed protocols in the instant action.[2]  The Government submitted the following exhibits:

Affidavit of Bruce Budowle, Executive Director of the Institute of Investigative Genetics, Govt.'s

Opp'n, Ex. 2, ECF No. [14-2]; Affidavit of Amy Jeanguenat, Director of Forensic Laboratory

Operations at Bode Cellmark Forensics, *Id.*, Ex. 4, ECF No. [14-4]; Affidavit of Lisa M. Brewer,

Laboratory Director and DNA Technical Leader for the Verdugo Regional Crime Laboratory, *Id.*,

Ex. 5, ECF No. [14-5]; Affidavit of Steve Renteria, DNA Technical Leader and CODIS

Administrator for the Los Angeles County Sheriff's Department, *Id.*, Ex. 6, ECF No. [14-6]; and

Affidavit of Elizabeth Thompson, DNA Laboratory Director of the Orange County Crime

Laboratory, *Id.*, Ex. 7, ECF No. [14-7].  Bode Cellmark, Verdugo Regional Crime Laboratory, and

---

[2] The parties also submitted Orders and Opinions from other judges addressing the issue of requiring the Government to split swabs prior to DNA extraction.  Anderson provided Orders issued by Associate Judges Yvonne Williams and J. Michael Ryan of the Superior Court of the District of Columbia on September 9, 2015, and February 14, 2014, respectively.  *See* Def.'s Mot., Exs. 1 & 2, ECF Nos. [10-1] & [10-2].  The Government provided an Order issued by District Judge James E. Boasberg, another Judge in this District Court, on January 5, 2016, and an Order issued by Senior Judge A. Franklin Burgess, Jr., of the Superior Court of the District of Columbia, on April 11, 2014.  See Govt.'s Opp'n, Exs. 1 & 3, ECF Nos. [14-1] & [14-3].  The Government also cited to orders of 17 other D.C. Superior Court judges in support of their opposition to Anderson's proposed protocol.  *See* Govt.'s Opp'n at 7.

the Los Angeles County Sheriff's Department Laboratory are ASCLD/LAB-International accredited laboratories.  Jeanguenat Decl. ¶ 2; Brewer Decl. ¶ 2; Renteria Decl. ¶ 8.

Anderson submitted an Affidavit of Marc Scott Taylor, President of Technical Associates, Inc., Def.'s Reply, Ex. A, ECF No. [24-1], a laboratory not accredited by ASCLD/LAB, in support of his request, Budowle Decl. ¶ 16; Taylor Decl. ¶ 19.  Anderson also submitted transcript of testimony provided by Amy Jeanguenat of Bode Cellmark Forensics during a proceeding in the Superior Court of the District of Columbia on September 11, 2015. Def.'s Reply, Ex. B, ECF No. [24-2].

Anderson argues that the pre-extraction splitting of the swabs enhances the reliability of the DNA by limiting the potential for contamination.  Def.'s Reply at 8.  Anderson cites to two publications in support of his argument: National Academy of Sciences, National Research Council, *The Evaluation of Forensic DNA Evidence* (1996) (*NRC II*), and the American Bar Association, Criminal Justice Section, *ABA Standards for Criminal Justice: DNA Evidence* (3d ed. 2007) (*ABA Standards*).  Anderson purports that the *NRC II* recommends dividing evidence items into two or more parts before DNA is extracted.  Moreover, Anderson argues that the *ABA Standards* indicate that a court should permit the defense to inspect and test DNA evidence in the prosecutor's possession.  Anderson argues that both of these publications support splitting the swabs prior to extraction so that the second half of the swab may be tested in the event that the initial sample is compromised.  Def.'s Mot. at 2; Def.'s Reply at 6, 9.

The Government argues that its proposed method, extracting all of the DNA at the same time for each swab and preserving any leftover extract for the defense, is the better method because it improves the chances of obtaining interpretable results by ensuring that the most DNA possible

is obtained.  Govt.'s Opp'n at 8-11.  The Government asserts that its approach is not contrary to the *NRC II* recommendation that "[e]vidence items should be divided into two or more parts at the earliest possible time, and one or more parts retained for possible repeat testing." *Id.* at 12 (quoting *NRC II* at 87).  The Government argues that this recommendation is qualified by the preceding sentence: "*Whenever feasible*, investigative agencies and testing laboratories should provide for repeating testing."  *Id.* (emphasis added).  Indeed, the Government asserts that the "whenever feasible" language is relevant to the issue before this Court because in the case of testing *touch DNA*, it is not scientifically advisable to split the sample before extraction.  *See* Govt.'s Opp'n at 13-14 (quoting Budowle Declaration, Renteria Declaration, and Thompson Declaration).  The Court notes that the *ABA Standards* similarly indicate that a portion of DNA evidence should be preserved *when possible* or a portion of the any extract should be preserved *when possible*.  *See* Def.'s Reply at 6 (citing *ABA Standards*, DNA Evidence 16-3.4(a)).  With respect to Anderson's request, the Government asserts that splitting touch DNA samples is scientifically inadvisable because of the low quantity of DNA in such samples.  Govt.'s Opp'n at 12.

The parties appear to agree that there is no way to determine how much touch DNA is present on a particular swab until extraction.  While both parties have presented evidence that their respective approaches are scientifically feasible, the Court is persuaded that the Government's proposed protocol is the scientifically advisable approach that is most likely to render interpretable results.  Indeed, the Government has submitted affidavits from five professionals in the field supporting the Government's proposed protocol and advising against the approach advanced by Anderson. In contrast, Anderson has provided one affidavit from President of a laboratory that has not sought accreditation, arguing that Anderson's proposed protocol would reduce the risk of

contamination of the entire sample.

The Court first notes that to the extent that an issue with contamination arises in this case, it does not appear that any contamination would result in a false positive result that would inculpate Anderson.  As pointed out in the Budowle declaration: "The most serious contamination to consider is DNA from the reference sample of a suspect . . . contaminates the evidence."  Budowle Decl. ¶ 6.  Here, as discussed above, it does not appear that the Government has a reference sample from Anderson at this time and the Court indicated that it will not require that Anderson submit a sample until it is known whether there is a DNA profile recovered from the firearm and/or magazine with which to compare it.  As such, while there is a general risk of contamination in this case as in any case, the risk is not that the swabs at issue would be contaminated with a sample of Anderson's DNA during testing.  Moreover, the Court notes that safeguards are in place to minimize the general risks of contamination in DNA testing and to detect any instances of contamination. Budowle Decl. ¶¶ 5, 14.

In contrast, the risk of following Anderson's proposed protocol is set forth by Amy Jeanguenat in her affidavit:

> It is not the routine practice for Bode Cellmark to test ½ of an item, evaluate the amount of DNA present and then go back to consume the remainder or the touch sample should it be determined that insufficient DNA is available. This is not a scientifically advisable policy for samples expected to produce low levels of DNA as it is known that DNA is lost during each stage of testing. This phenomenon has been studied primarily with DNA extraction . . . but may also occur during the sample manipulator/cutting and concentration steps. While it is unknown exactly how much DNA is lost, by essentially testing the sample twice, you risk losing twice as much DNA than would have been lost had the entire sample been consumed at the outset. Since it is not clear whether a percentage of DNA or a particular amount of DNA . . . is lost, this is a particularly risky policy for samples that are expected to have low levels of DNA.

12

Jeanguenat Decl. ¶ 12; *see also* Budowle Decl. ¶ 12 ("Sample splitting can consume more DNA prior to testing which can reduce the success of obtaining a reliable DNA typing result."). Anderson asserts in his reply that after hearing testimony from Jeanguenat during a hearing, a D.C. Superior Court judge ordered the swab-splitting approach advocated by the defense. *See* Def.'s Reply at 7-8.

Based on the evidence before the Court, it appears that the proposed protocol advocated by the Government is the approach utilized by ASCLD/LAB-International accredited laboratories as the most scientifically advisable protocol for retrieving interpretable results from a touch DNA sample. As such, the Court shall not require the Government to split the two sets of swabs recovered from the firearm and the magazine prior to extracting DNA as requested by Anderson. The Court notes that this ruling does not foreclose Anderson from presenting a defense, if he deems one necessary, to any DNA evidence resulting from this testing. Indeed, the extract will only be consumed in its entirety if it is deemed necessary by the laboratory to obtain interpretable results. *See* Jeanguenat Decl. ¶ 10 ("Consumption is always a last resort . . . ."). Anderson in his briefing, by proposing that the second half of the swabs be used by the Government if there is insufficient DNA extract from the first half of the swabs, has acknowledged the possibility that the consumption of all the DNA extract obtained from the swabs may be necessary in order to produce scientifically reliable results. *See* Budowle Decl. ¶ 5. To the extent that there is DNA extract left, it shall be preserved for defense use. Moreover, Anderson may have an independent expert review the government laboratory's work and may cross-examine any experts involved in the testing.[3]

---

[3] If requested by the defense, their expert should be allowed to observe, not participate, in the testing.

### III.  CONCLUSION

For the foregoing reasons, the Court DENIES the Defendant's [10] Motion to Compel Government to Preserve Evidence.  The Court shall not require the Government to split in half the two sets of swabs, one set of wet and dry swabs recovered from a firearm and one set of wet and dry swabs recovered from the firearm's magazine, prior to testing them.  As such, the Government is permitted to authorize the laboratory to consume the entire sample from these swabs should the laboratory deem it necessary to obtain scientifically reliable results.  To the extent that DNA extract is left over after testing, it shall be preserved for possible defense use.

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE